UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DARRELL W. BUMPAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 3 10 0061 |
| v. | ) No. 3:09mc0207 |
| | ) Judge Trauger |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA, ET AL., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM

The plaintiff, proceeding *pro se* and *in forma pauperis*, is a prisoner in the Metro-Davidson County Detention Facility (MDCDF) in Nashville. He brings this action under 42 U.S.C. § 1983 against Corrections Corporation (CCA) of America and sixty-eight (68) other defendants. The plaintiff seeks unspecified damages related to the conditions of his confinement at MDCDF.

This action is pending initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A. The initial review has not been conducted, because the plaintiff has refused to comply with the Orders of the court. The plaintiff refuses to limit the statement of facts, now estimated to comprise twenty (20) separate documents totaling approximately eight hundred eighty-five (885) pages,[1,2] and he continues to file additional statements of fact despite the court's Order that he refrain from doing so until after the court has concluded its initial frivolity review.

In an Order entered November 12, 2009, the court advised the plaintiff that his 114-page statement of facts – then consisting of the original complaint and three (3) "continuations" (Docket

---

[1] The court describes the statement of facts as "estimated" and "approximate" because the number, size, disarray, and frequent irrelevance of the documents filed make it impossible to be precise.

[2] The pages referred to herein include attachments and exhibits.

Entry No. 1, 3, 7, 9) – did not comply with Rule 8, Fed. R. Civ. P., because the statement of facts did not provide "a short and plain statement of the claim . . . ." (Docket Entry No. 15, p. 2) The court directed the plaintiff to resubmit the statement of facts, "not [to] exceed ten (10) pages, one sided," and not to file any further "'additions' or 'continuations' to his resubmitted statement of facts before the court conclude[d] its initial review . . . ." (Docket Entry No. 15, p. 3) The court forewarned the plaintiff that, if he failed to comply with the court's Order, the case would be dismissed with prejudice for failure to comply with the Orders of the court, and for failure to prosecute. (Docket Entry No. 15, p. 3) Before the court's November 12, 2009 Order entered, the plaintiff filed an additional three (3) "continuations" (Docket Entry No. 11-12, 14), totaling one hundred seventy-five (175) pages, bringing the statement of facts at that time to approximately two hundred eighty-nine (289) pages set forth in seven (7) different documents (Docket Entry No. 1, 3, 7, 9, 11-12, 14).

On November 20, 2009, the plaintiff submitted a revised statement of facts in response to the court's November 12, 2009 Order.[3] (Docket Entry No. 18) In that document, the plaintiff wrote:

> Plaintiff responds to the order in part and enters this statement of facts (docket entry no. # 15) consisting of 12 pages instead of 10 as the court ordered . . . .

(Docket Entry No. 18) As shown by the statement above, the plaintiff knowingly disregarded the court's Order to limit the statement of facts to ten (10) pages.

In any event, Docket Entry No. 18 does not lend itself to liberal construction. First, the amended complaint is a rambling affair that can be read only with great difficulty. Second, some

---

[3] There is no official stamp on the envelopes to indicate when the documents addressed herein were delivered to the MDCDF mailroom to be mailed to the district court. The filing dates referred to herein are based on the postmarks on those envelopes. *See Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002).

of the plaintiff's allegations date back to 2004, clearly beyond the one-year statute of limitations. Having failed to provide temporal context to many of his remaining claims, it is not always possible to determine which of those remaining claims pertain to this action and which pertain to the plaintiff's past and/or pending actions in district court. The plaintiff dedicates several pages in his amended complaint to these "other" cases.

Although the plaintiff makes a few claims in Docket Entry No. 18, spanning the spectrum of violations from the First to the Fourteenth Amendments, those claims must be viewed in the context of the overall delusional tenor of Docket Entry No. 18. Following are examples of the plaintiff's delusional rambling that comprise much of the amended complaint: MDCDF officials have posed as federal agents conducting federal investigations; an MDCDF official told other inmates "that now they can't kill me now because I snitched to the [D]ept. Of Justice"; MDCDF officials pay "gangsters, gang member[s], gangs, & Mafia families" to stalk the plaintiff; MDCDF officials have used other inmates to poison the plaintiff's food; the Unit Manager gives orders to inmates to carry out actions against the plaintiff "through a chip"; there are "aliens from Asia, & Africa (Ira[k], Iran, Nigeria, N[a]irobi and etc.) who have access to the government computers"; some of the MDCDF officers "are convicted felons"; inmate _____ "criminally exploits" other inmates to the benefit of the MDCDF staff; members of the CCA corporate office come to MDCDF to visit inmate _____ and "walk[] around laughing and talking to him"; MDCDF officials "talk[ed] really bad about a girl they raped and killed in Pod 1"; "Captain _____ is married to the Mafia family"; "The Mexican Gorcia [sic] told me . . . they kill people, and . . . sell their body parts for food and transplants to participating dealers"; "the female officers old & young wear tight pants and approach me sexually"; "Sgt. Sain . . . said we can go all the way looking seductive and licking her lips, and looking at my penis in Case Managers [sic] _____ office"; "[m]ost of the guys are gay or

3

bisexual and try to attack me with their homosexual tendencies" on the orders of MDCDF officials; "my attorneys are attacked or persuaded to leave by threats"; "I was shot or stuck with a needle in my sleep after my food was drugged with bleach or some other toxic poison," etc.

On November 24, 2009, four (4) days after his failure to comply with the court's order to restrict the statement of facts to 10 pages, the plaintiff filed a 24-page document captioned "Motion for appointment of Counsel And notice to the courts . . . ." (Docket Entry No. 22) Only the first few pages of Docket Entry No. 22 pertain to the motion to appoint counsel. The remaining pages present apparent new claims, additional statements of fact, and supporting documents. Inasmuch as the plaintiff intended Docket Entry No. 18 as his response to the court's 10-page limit, Docket Entry No. 22 was filed with knowing disregard for the court's Order not to submit any further statements of fact until the court had concluded the required initial review.

Despite the fact that the plaintiff knowingly disregarded the court's November 12, 2009 Order, the court entered an Order on November 25, 2009, in which it clarified its prior Order, reminded the plaintiff that he had until December 14, 2009 to comply, and advised him that no further extensions of time would be granted. (Docket Entry 19) The plaintiff filed the following documents in the weeks immediately following his receipt of the court's November 25, 2009 Order.

On November 30, 2009, the plaintiff filed a 76-page document captioned "Notice, And plaintiff asking the courts urgently for appointment of counsel." (Docket Entry No. 23) Although Docket Entry No. 23 purports to request appointment of counsel, only the first page pertains to the motion. The remaining pages comprise apparent new claims, additional statements of fact, and supporting documents. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 1, 2009, the plaintiff filed three hundred ninety-one (391) pages of

4

miscellaneous documents marked on the first page as "*Statement of Facts*." (Docket Entry No. 26) Docket Entry No. 26, many of the latter pages of which have writing on both sides, set forth apparent new claims, additional statements of fact, and supporting documents in this action, as well as documents pertaining to other cases, documents pertaining to the plaintiff's incarceration in other facilities dating back to mid-2007, and documents that are seemingly unrelated to anything. In short, it appears that the plaintiff filed his entire personal legal file, whether the documents pertained to this action or not, again disregarding the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 3, 2009, the plaintiff filed an un-captioned 16-page document. (Docket Entry No. 24) Docket Entry No. 24 was submitted ostensibly as a second attempt to satisfy the court's Order to limit the statement of facts to not more than ten pages, wherein he repeats his continued request to appoint counsel. The plaintiff denotes the second page of the document as the beginning of the statement of facts and, if counted from there, the statement of facts would comply with the court's 10-page limit. However, the statement of facts actually begins on the first page. Thus the statement of facts is 10-plus pages, not 10 pages as the court ordered.

Docket Entry No. 24 is, once again, a rambling affair that does not lend itself to liberal construction. As in the case of Docket Entry No. 18, some of the plaintiff's allegations date back to the mid-2000s, well beyond the one-year statute of limitations. Also lacking a consistent temporal reference, it is again difficult to determine which claims pertain to this action and which are linked to the plaintiff's past and/or pending actions in district court, cases to which the plaintiff makes repeated reference.

As to those claims that appear to pertain to this action, once again, they must be viewed in the context of the overall delusional nature of Docket Entry No. 24. The plaintiff repeats many of

5

the more outlandish claims that he made in Docket Entry No. 18, adding that: gang members . . . Arian Nation White Pride Members . . . She[i]te Muslims . . . [and] Jews who work with [MDCDF] officers . . . will eventually be the end of the American government and American way"; inmates who work for MDCDF officials "rape girls, and drug them, and steal all of their personal information and use the babies to switch them out in [the] hospital to adapt others names, and familiar looks, and after their [*sic*] planted . . . the information is collected through jail, 'as this one' who allow inmates access to governments computers and convicts who are staff"; after "the babies are switched out at the hospital by girls who ha[ve] been raped . . . the family gets harvested, or murdered, and their social security is collected"; MDCDF inmates and officials use the Life-Line program to further their criminal enterprise; "criminals . . . shop for victims on government computers out here at CCA-Metro . . . [a]nd these Mafia families & crime families out here does . . . work for the government"; two state criminal judges own stock in CCA and profit from the criminal activities at MDCDF; Metro-Davidson County hires "convicted felons as officers & gang members as staff . . . [to] launder money through Corrections Corporation of America"; Sgt. _____ goes "in the back office out of sight of the cameras with inmates"; the entire Metro-Davidson County government is involved in the criminal activities at MDCDF; etc.

On December 7, 2009, the plaintiff filed a 46-page document captioned "Corrected Memorandum And update of the courts order (Docket Entry No. # 15, 19) And Exhibits." (Docket Entry No. 25) Although Docket Entry No. 25 purports to update the list of defendants, it also adds forty-four (44) additional pages of apparent new claims, statements of fact, supporting documents, and a repeat of his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

6

On December 9, 2009, the plaintiff filed a 23-page un-captioned document. (Docket Entry No. 27) Docket Entry No. 27 adds apparent new claims, statements of fact, supporting documents, and a repeat of his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 10, 2009, the plaintiff filed a 22-page document captioned "SWORN AND TRUE AFFIDAVIT FROM THE PLAINTIFF DARRELL W. BUMPAS, and exhibits." (Docket Entry No. 28) Docket Entry No 28 adds apparent new claims, statements of fact, supporting documents, and a repeat of his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 15, 2009, the plaintiff filed a 10-page document. (Docket Entry No. 31) Docket Entry No. 31, several pages of which have writing on both sides, adds apparent new claims, statements of fact, supporting documents, and a repeat of his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 16, 2009, the plaintiff filed a 6-page document captioned "Permission For Appointment of Counsel . . . ," several pages of which have writing on both sides. (Docket Entry No. 30) The first half of the document pertains to the plaintiff's request for appointment of counsel. The second half of Docket Entry No. 30 adds apparent new claims, factual allegations, and supporting documents. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 17, 2009, the plaintiff filed a 7-page document, mailed to the court in an

envelope sealed with drops of blood. (Docket Entry No. 33) The plaintiff adds three (3) pages of apparent new claims, four (4) pages of exhibits, and repeats his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 18, 2009, the plaintiff filed a 26-page document in which he "gives the court a status on the above proceedings." (Docket Entry No. 32) Docket Entry No. 32 adds two (2) pages of apparent new claims, twenty-four (24) pages of appendices, and repeats his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 21, 2009, the plaintiff filed a 28-page document captioned "Affidavit in support of motion for appoint of counsel Pursuant to § 1915." (Docket Entry No. 34) Docket Entry 34 adds seven (7) pages of apparent new claims, twenty-one (21) pages of exhibits, many of which appear to have been submitted previously, and repeats his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

On December 24, 2009, the plaintiff filed an 11-page document alerting the court about the U.S. Marshal's investigation into the plaintiff's envelope that was sealed with drops of blood. (Docket Entry No. 35) Docket Entry No. 35 adds three (3) pages of apparent new claims, eight (8) pages of appendices, and repeats his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the initial required review.

On December 28, 2009, the plaintiff filed a 23-page document in which "Plaintiff Alerts!!!" the court of additional actions allegedly taken against him by MDCDF officials. (Docket Entry No.

8

36) Docket Entry No. 36 adds apparent new claims, factual allegations, supporting documents, and repeats his request to appoint counsel. In filing this document, the plaintiff disregarded the court's Order not to file any further such documents until the court had the opportunity to conduct the required initial review.

The documents described above, all filed after the court ordered the plaintiff not to file any further statements of fact until after it had concluded the required initial review, total approximately seven hundred five (705) pages. Added to the plaintiff's earlier pleadings, the statement of facts and supporting documents now before the court are estimated to be in excess of eight hundred eighty-five (885) pages, set forth in twenty (20) separate documents.[4]

The court instructed the plaintiff to resubmit his statement of facts in not more than ten (10) pages. He has not. The plaintiff noted affirmatively in the first instance that his non-compliance was knowing (Docket Entry No. 18), and attempted in the second instance to mislead the court into believing that he had complied with the court's Orders (Docket Entry No. 22). The court also instructed the plaintiff not to file any further amendments to the statement of facts until after the court had completed its initial review. The plaintiff's incessant filings described above have been in open defiance of that Order.

Were this the plaintiff's first time litigating in district court, the court might conclude that he misunderstood the court's Orders. However, the plaintiff has had five (5) previous cases in this court.[5] Inasmuch as the plaintiff has been litigating continuously in the district court since 1997, the

---

[4] While this Memorandum was pending review, the plaintiff filed an additional seven (7) documents (Docket Entry No. 40-46) totaling one hundred thirty-one (131) pages, thus bringing the statement of facts and supporting documents in this action to an estimated one thousand sixteen pages (1,016) set forth in twenty-seven (27) documents.

[5] *Bumpas v. Correct Care Solutions, et al.*, No. 3:09-0523 (M.D. Tenn. Jun. 8, 2009)(Haynes, J.); *Bumpas v. Davidson County Sheriff's Office*, No. 3:08-0977 (M.D. Tenn. Sep. 17, 2009)(Trauger, J); *Bumpas v. CCA Metro*

9

plaintiff is deemed to understand that he is required to comply with the orders of the court. Given the plaintiff's conduct, the court is forced to conclude that he simply refuses to do so. Accordingly, for the reasons explained herein, and in the court's previous Orders (Docket Entry No. 15, 19), this case will be dismissed with prejudice for want of prosecution, for failure to comply with orders of the court, and such dismissal shall constitute a dismissal on the merits. Rule 41(b), Fed. R. Civ. P., see *Link v. Wabash R.R.*, 370 U.S. 626, 629-31 (1962).

The next question is how the dismissal in this action should be characterized under the Prison Litigation Reform Act (PLRA). Under PLRA, the courts are required to dismiss a prisoner's complaint if it is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). Although there is scant authority in the Sixth Circuit regarding what constitutes "malicious" under of 28 U.S.C. § 1915(d), in an unpublished case, the Sixth Circuit has written that "a complaint is malicious . . . if it is ***repetitive*** or evinces an ***intent to vex*** defendants or ***abuse the judicial process*** by relitigating claims decided in prior cases." *Washington v. Reno*, No. 95-5062, 1995 WL 376742 at * 1 (6th Cir. (Ky.))(emphasis added). The Fifth Circuit, in turn, has written that the federal courts do "***not sit as a means by which the system can be punished – or*** to be ***punished ourselves – by the pursuit of*** frivolous or ***malicious [actions] by disgruntled state prisoners***." *Gabel v. Lynaugh*, 835 F.2d 124, 125 (5th Cir. 1988)(emphasis added). Taken together, *Washington* and *Gabel* support the conclusion that, under certain fact-specific circumstances present here, the district court may dismiss a case as "malicious" where a prisoner-plaintiff's filings constitute a deliberate effort to vex the court and/or to abuse the judicial process.

---

*Davidson County Detention Facility*, No. 3:08-0888 (M.D. Tenn. Sep. 19, 2008 )(Haynes, J); *Bumpas v. Metropolitan Government of Nashville & Davidson County, et al.*, No. 3:07-0766 (M.D. Tenn.)(Echols, J); *Bumpas v. Prison Health Services*, 3:99-0269 (M.D. Tenn. Feb. 22, 2002)(Campbell, J).

10

For the reasons explained herein, the court finds that the plaintiff acted with the malicious intent to vex the court, to abuse the judicial process by pursuing a pattern of conduct intended to waste scarce judicial resources, and to "cover the court in paper"[6] in an effort to force the court to appoint counsel as a means of stopping the flood of his *pro se* filings. Accordingly, this action will be dismissed as "malicious" under the PLRA and, as such, shall count as a strike under 28 U.S.C. § 1915(g).

An appropriate Order will be entered.

Aleta A. Trauger
United States District Judge

---

[6] The plaintiff has filed documents in which he sets forth additional factual allegations, provides additional supporting documents, and repeats his request to appoint counsel on the average of every other day since the end of November.